UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA WHITE, | ) | |
| o/b/o T.P. | ) | CASE NO.  1:11-CV-1652 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Christina White's ("Plaintiff" or "White") application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, on behalf of her child, T.P., is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

## I.  INTRODUCTION & PROCEDURAL HISTORY

Plaintiff, on behalf of her son, T.P., protectively filed an application for Supplemental Security Income benefits on August 20, 2007.  (Tr. 51, 98-100).  White alleged T.P. became disabled on January 1, 2006, due to suffering from asthma and a compulsive disorder.  (Tr. 134). The Social Security Administration denied Plaintiff's application initially and upon reconsideration.  (Tr. 51-52).  Thereafter, White timely requested a hearing before an administrative law judge to contest the denial of her application for benefits.  (Tr. 62).  The

Social Security Administration granted White's request and scheduled a hearing. (Tr. 64-67, 78-82).

On May 5, 2010, Administrative Law Judge Elliott Bunce (the "ALJ") convened a hearing via video to evaluate Plaintiff's application for benefits. (Tr. 31-50). The ALJ presided over the hearing from the National Hearing Center in Falls Church, Virginia. (Tr. 33). Plaintiff and T.P. appeared with counsel in Cleveland, Ohio, and both testified before the ALJ. (Tr. 31-50). No expert witnesses testified during the hearing. (*Id.*). On May 24, 2010, the ALJ issued an unfavorable decision denying Plaintiff's request for benefits. (Tr. 13-25). Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 9). However, the council denied White's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now appeals the Commissioner's decision. Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A. Personal & Educational Evidence

T.P. was born on January 1, 1999. (Tr. 35-36). At the time of the hearing, he was 11 years old and in the fifth grade. (Tr. 35). He was enrolled in special education classes for reading and math and also participated in an Individualized Education Program ("IEP"). (Tr. 37, 197). At the end of T.P.'s fourth grade year, he earned C's in reading and writing; B's in spelling and math; and A's in science and social studies, but these grades were based on "modified assignments and tests" included in his IEP. (Tr. 196-97). His teachers noted he was making progress in some areas, but only minimal progress in others. (Tr. 197). T.P.'s IEP plan for the fifth grade indicated he was reading at the first grade level at the beginning of the school year. (Tr. 227).

### B. Medical Evidence

In July 2007, Dr. Frank Ezzo, a psychologist, conducted a consultative evaluation of Plaintiff's impairments. (Tr. 339-52). Prior to rendering his opinion, Dr. Ezzo met with T.P. twice in June 2007. (Tr. 339). T.P. was eight years old at the time of Dr. Ezzo's examination. (*Id*.). Dr. Ezzo diagnosed T.P. with pervasive developmental disorder, not otherwise specified. (Tr. 346). Based on testing performed, Dr. Ezzo also concluded it was "possible" T.P. could suffer from autism. (Tr. 345). During the interviews, T.P. exhibited speech delays and was sometimes hard to understand. (Tr. 342). The doctor noted T.P. was receiving special education services for speech therapy, but opined that T.P. also had problems with expressive and receptive language development. (Tr. 341).

Between December 2007 and January 2008, three state agency reviewers evaluated T.P.'s medical record, including Dr. Ezzo's report, to assess his impairments: a pediatrician, psychologist and speech therapist. (Tr. 403-08). Together, these reviewers completed a Childhood Disability Evaluation Form assessing T.P.'s degree of limitation in each of the six domains addressed in child disability cases. The reviewers concluded T.P. suffered from a less than marked limitation in the following five domains: acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for yourself and health and physical well-being. (Tr. 405-06). However, they found T.P. had a marked limitation in the domain of interacting and relating with others. (Tr. 405). A few months later, in April 2008, three separate reviewers (a pediatrician, psychologist and speech therapist) jointly reviewed the prior assessment and affirmed it as written. (Tr. 435-37).

Nearly two years later, Plaintiff established care with Dr. Ezzo and he re-evaluated T.P. and rated the child's abilities in the same six functional domains. (Tr. 496-98). Dr. Ezzo

indicated T.P. had marked limitations in the domains of acquiring and using information and caring for yourself, and no limitation in the area of health and physical well-being.  (Tr. 496-97).[1]  Dr. Ezzo also noted that at the time his opinion was rendered, he had only treated T.P. for two months.  (Tr. 496).

### III.  STANDARD FOR CHILDHOOD SSI CASES

A child under age eighteen will be considered disabled if he/she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i).  Childhood disability claims involve a three-step process evaluating whether the child claimant is disabled.  20 C.F.R. § 416.924.  First, the ALJ must determine whether the child claimant is working.  If not, at step two the ALJ must decide whether the child claimant has a severe mental or physical impairment  Third, the ALJ must consider whether the claimant's impairment(s) meet or equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.  An impairment can equal the listings medically or functionally.  20 C.F.R. § 416.924.

A child claimant medically equals a listing when the child's impairment is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  Yet, in order to medically equal a listing, the child's impairment(s) must meet all of the specified medical criteria.  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990).

---

[1] The Court notes that the record does not contain Dr. Ezzo's full report.  The portion included in the record does not show how Dr. Ezzo rated Plaintiff in the remaining three domains.  The first page of the report found on page 496 of the transcript stops its enumeration at number four, but the following page starts at number eight.  The Court presumes that the missing page contains numbers five, six and seven, which would likely contain the doctor's rating of T.P. in the missing domains.  Neither party noted this omission in the record.

A child claimant will also be deemed disabled when he or she functionally equals the listings. The regulations provide six domains that an ALJ must consider when determining whether a child functionally equals the listings. These domains include:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and,

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). In order to establish functional equivalency to the listings, the claimant must exhibit an extreme limitation in at least one domain, or a marked impairment in two domains. 20 C.F.R. § 416.926a(d).

> The regulations define "marked" and "extreme" impairments:
>
> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

5

During the evaluation of a child disability claim, the ALJ must consider the medical opinion evidence in the record. 20 C.F.R. § 416.927. A treating physician's opinions should be given controlling weight when they are well-supported by objective evidence and are not inconsistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2). When the treating physician's opinions are not given controlling weight, the ALJ must articulate good reasons for the weight actually assigned to such opinions. *Id*. The ALJ must also account for the opinions of non-examining sources, such as state agency medical consultants, and other medical opinions in the record. 20 C.F.R. § 416.927(e)(2)(i-ii). Additionally, the regulations require the ALJ to consider certain other evidence in the record, such as information from the child's teachers, 20 C.F.R. § 416.926a(a), and how well the child performs daily activities in comparison to other children the same age. 20 C.F.R. § 416.926a(b)(3)(i-ii).

## IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence and whether, in making that decision, the Commissioner employed the proper legal standards. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" has been defined by the Sixth Circuit as more than a scintilla of evidence, but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if a reasonable mind could accept the record evidence as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* While the Court has discretion to consider the entire record, this Court does not determine whether issues of fact in dispute would be decided differently, or if substantial evidence also supports the opposite conclusion. The Commissioner's decision, if supported by substantial

6

evidence, must stand. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner,* 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff asserted four assignments of error challenging the ALJ's decision. First, White contends the ALJ improperly evaluated the opinion of T.P.'s treating psychologist, Dr. Frank Ezzo. Plaintiff's next two assignments of error allege the ALJ erred in assessing T.P.'s limitations in two domains: 1) acquiring and using information; and 2) caring for yourself. Finally, Plaintiff maintains there is new evidence, which was not presented to the ALJ, which warrants consideration. Because the Court finds two of Plaintiff's arguments have merit, remand is proper.

Substantial evidence does not support the ALJ's finding that T.P. suffered from a "less than marked" limitation in the domain of caring for yourself. This domain examines how well a child maintains a "healthy emotional and physical state". 20 C.F.R. § 416.926a(k). It also measures how well the child copes with stress and changes in the environment, and whether the child can take care of his or her own health, possessions and living area. *Id.* The regulations advise that school-aged children, ages 6 to 12, should be independent in most daily activities, such as dressing and bathing oneself, although the child may still need routine reminders. *Id.* at (k)(2)(iv). Children in this category should also "begin to develop [an] understanding of what is

7

right and wrong," and "be able to avoid behaviors that are unsafe or otherwise not good for [them]". *Id*. Examples of limited functioning in this domain include disturbances in eating or sleeping patterns, failing to dress or bathe oneself appropriately, and failing to "spontaneously pursue enjoyable activities or interests." *Id*. at (k)(3).

The ALJ concluded T.P. had a less than marked limitation in this area of functionality. The ALJ based this finding on the opinion of the state agency reviewers who indicated T.P. was so limited in this domain. The ALJ also claimed to rely upon Plaintiff's testimony regarding T.P.'s ability to perform self-care tasks. And, although the ALJ acknowledged T.P. suffered from "OCD-like symptoms", the ALJ found the child's medical record did not support finding a marked limitation in this area as T.P. was "progressing through school" and was "abl[e] to care for his needs independently in a school setting." (Tr. 24).

Plaintiff objects to this finding for several reasons. To begin, White argues the ALJ inaccurately summarized her testimony in a way that mischaracterized her description of T.P.'s hygiene habits. During the hearing, the ALJ questioned White as follows:

> Q: Now, I am going to ask you a little about I think [sic] can call "general hygiene." Now again, I think we should agree that an 11-year-old boy probably isn't going to be the best example of hygiene we could find, but, Ms. White, in areas like brushing teeth, taking baths, wearing clean clothes, how does he do?
>
> A: Awful. I am sorry. Clean clothes is not a problem because I wash clothes. I wash the clothes, so he has clean clothes. But, as far as his hygiene, there is a struggle every day.
>
> Q: In other words, you have to direct it?
>
> A: Yes

(Tr. 43-44). In the written decision, the ALJ summarized this exchange by indicating White testified, "other than having to direct the claimant, [the child] has no difficulties in caring for

himself." (Tr. 19).

The Court finds the ALJ's restatement of this portion of White's testimony was faulty. The ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Vance v. Astrue*, No. 2:09-cv-1006, 2011 WL 1238231, at *5 (S.D.Ohio Mar. 28, 2011) (*quoting Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). It is true that White testified she had to direct T.P.'s self-care routine, but this was not the full extent of her testimony. The ALJ's initial question to Plaintiff asked her to assess T.P.'s habits *in light of the fact* he was an 11-year-old boy, and that boys his age did not typically exhibit the best hygiene practices. With this framework in mind, White responded that T.P.'s skills were "awful".

The ALJ makes no mention of this portion of White's testimony, although it was evidence which would appear to support limitations greater than those found by the ALJ. Instead, the ALJ indicated White testified that "other than having to direct [T.P.], he ha[d] no difficulties in caring for himself." (Tr. 19). While White may have had to "direct" Plaintiff to perform these tasks, this statement does not undermine White's prior testimony that T.P. was awful at sustaining his hygiene needs or that she had to struggle with him every day. From the undersigned's review of the record, there is ambiguity as to the extent to which White had to "direct" T.P. The ALJ seemed to interpret White's testimony as meaning T.P. only required the typical amount of direction any *normal* 11-year-old boy would require in the area of hygiene. But, White's testimony could be interpreted differently, and the colloquy between the ALJ and White suggests White intended a different meaning. The ALJ's question specifically asked Plaintiff to assess T.P.'s hygiene habits *considering* that they would not be perfect given T.P.'s age. It was in this context, Plaintiff stated T.P.'s habits were awful. Thus, it appears that

9

Plaintiff believed her son's habits were worse than those of a typical 11-year-old boy.

Although the ALJ is not required to cite to every piece of evidence in the record, the ALJ's opinion should nonetheless allow the Court to understand how the ALJ reached his decision.  If the ALJ believed White's testimony only indicated T.P. required a reasonable amount of instruction, the ALJ should have explained the basis for this finding given that White's initial testimony suggested Plaintiff had serious limitations in this domain.  Without such explanation, it appears the ALJ improperly disregarded this portion of Plaintiff's testimony, and instead chose to acknowledge only her statement that she had to direct the child.  On the other hand, if the ALJ intentionally discredited the former portion of White's testimony, the ALJ was required to explain his basis for doing so to ensure subsequent reviewers could understand his reasoning.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007).  Nothing in the ALJ's opinion implies he questioned the veracity of White's statements.  Therefore, the undersigned is left to guess whether the ALJ purposely disregarded White's prior statements, accidently overlooked them, or considered them as merely indicative of T.P.'s need to be reasonably directed.

Likewise, the ALJ's characterization of Plaintiff's testimony tainted the ALJ's evaluation of Dr. Ezzo's assessment of T.P.'s limitation in this domain.  In April 2010, Dr. Ezzo opined Plaintiff was markedly limited in this area because he had difficulty with daily activities like bathing, and was unable to appropriately control his emotions.  The ALJ partially discredited the doctor's opinion because he found it was inconsistent with White's testimony. But, Plaintiff's testimony did not actually conflict with Dr. Ezzo's finding.  It was the ALJ's characterization of White's testimony which was inconsistent with Dr. Ezzo's opinion.  Accordingly, it was improper for the ALJ to discount the doctor's finding on the account that it did not align with

10

Plaintiff's testimony.

Instead of crediting Dr. Ezzo's finding, the ALJ relied upon the opinions of the state agency reviewers who concluded T.P. had a less than marked limitation in this domain. However, the undersigned notes these reviewers provided little commentary explaining the basis for their finding.  The only explanation provided to support the degree of limitation indicated was a reference to a statement from White indicating T.P. crossed the street without looking both ways.  Although state agency physicians are viewed as experts in the evaluation of Social Security claims, 20 C.F.R. § 416.927(e)(2)(i), the Court notes the state agency consultants herein rendered their opinions approximately two years prior to Dr. Ezzo, and their opinions are not necessarily inconsistent with Dr. Ezzo's opinion.  Dr. Ezzo's report and White's testimony imply that T.P.'s limitations in this domain had progressed since the time the state agency reviewers had evaluated T.P.'s record.  Because the state agency reviewers rendered their opinions two years prior to Dr. Ezzo, their opinions did not provide adequate support for the ALJ to disregard Dr. Ezzo's finding.  *See Brewer v. Astrue*, No. 1:10-CV-1224, 2011 WL 2461341, at *7 (N.D.Ohio June 17, 2011) (finding it unreasonable to reject treating physician's opinion on the ground that it differed from non-treating sources, when those sources did not have the benefit of treating source's recent treatment records).  Though Dr. Ezzo had only treated T.P. for two months at the time he rendered his opinion, neither the ALJ nor the Commissioner challenged Dr. Ezzo's status as T.P.'s treating psychologist. Despite the brevity of the treating relationship, Dr. Ezzo treated T.P. long enough to perceive T.P. had problems with completing these types of tasks. In light of the fact that the ALJ's ruling was based upon outdated opinions and the ALJ's skewed view of White's testimony, the undersigned finds the record does not support the ALJ's decision on T.P.'s degree of limitation in this domain.

The ALJ's errors require remand. The ALJ held T.P. suffered from a marked limitation in the domain of interacting and relating with others. Had the ALJ interpreted White's testimony differently and/or credited Dr. Ezzo's opinion regarding Plaintiff's limitation in this domain, the ALJ might have found T.P. to suffer from a marked limitation in this domain also. In situations where a child claimant has marked limitations in two domains, the regulations view the child as functionally equaling the listings, and award benefits. 20 C.F.R. §§ 416.924, 416.926a(a). Thus, the ALJ's failure to explain his interpretation of White's testimony and his treatment of Dr. Ezzo's opinion were not harmless. *See DiRocco v. Astrue*, No. 09-094, 2010 WL 1490829, at *1-2 (D.R.I. Apr. 13, 2010) (finding remand proper where the ALJ's error "could have been influential" upon his ultimate decision).

Because the undersigned finds that remand is proper on other grounds, it is not necessary to evaluate Plaintiff's remaining assignments of error. However, the undersigned notes that because the ALJ's review of Dr. Ezzo's opinion was at least partially deficient, the ALJ should re-evaluate the doctor's opinion with respect to T.P.'s limitations in each of the six domains, namely, acquiring and using information and caring for yourself. In addition, because the state agency reviewers' opinions all predated Dr. Ezzo's finding by two years, it may be prudent for the ALJ to retain a medical expert to testify at the subsequent hearing in order to reconcile the differences between Dr. Ezzo's findings and those of the state agency reviewers, based on a review of the entire record. Finally, Plaintiff's brief cited and referred to a significant amount of evidence which was not presented to the ALJ. On remand, Plaintiff will have the opportunity to present this evidence to the ALJ.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration for further proceedings not inconsistent with this decision.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  September 28, 2012.